UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-CR-22 RLW |
| ) | |
| DARYN J. EASTON, ) | |
| ) | |
| Defendant. ) | |

## AMENDED MEMORANDUM AND ORDER

Defendant Daryn J. Easton ("Easton") filed a pro se Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 47), and the Office of the Federal Public Defender filed a Memorandum of Counsel in Support of the Motion (ECF No. 54) that asks the Court to reduce Easton's sentence to time served. The Government opposes Easton's Motion (ECF No. 57). The United States Probation Office filed a Report that confirms the medical information set forth in Easton's Motion and Memorandum. (ECF No. 56.)

For the reasons that follow, Easton's Motion is granted. Easton's sentence is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), and he shall be immediately released from the custody of the federal Bureau of Prisons. Upon his release, Easton shall be subject to the conditions imposed in the Amended Judgment to be entered by the Court. All other aspects of Easton's sentence remain unchanged.

**I.    BACKGROUND**

On February 15, 2018, Easton was charged in a three-count indictment with Felon in Possession of a Firearm in Count I, in violation of 18 U.S.C. § 922(g); Possession With Intent to Distribute Marijuana in Count II, in violation of 21 U.S.C. § 841(a)(1); and Possession of a

Firearm in Furtherance of a Drug Trafficking Crime in Count III, in violation of 18 U.S.C. § 924(c)(1)(A). Easton entered a guilty plea to all three counts on August 20, 2018 pursuant to a Plea Agreement. In the Plea Agreement, Easton admitted that on December 12, 2017, an ATF Special Agent obtained a federal search warrant for his residence in Charleston, Missouri, in Mississippi County, in the Eastern District of Missouri, based on reliable information that marijuana and illegal firearms would be located at Easton's residence. On December 15, 2017, ATF Agents and other law enforcement officers executed the search warrant at Easton's residence. Inside, the officers located firearms, ammunition, drug paraphernalia, approximately nine kilograms of marijuana, and $20,210 in cash. Easton admitted that all of the money was his, the money was the proceeds of selling marijuana, and one of the guns was his.

The Presentence Investigation Report ("PSR") states that Easton's Total Offense Level was 17 and his Criminal History Category was III. (ECF No. 34 at 15, ¶ 67.) The guideline imprisonment range was 30-37 months. On November 29, 2018, this Court sentenced Easton to 30 months' imprisonment on Counts I and II, concurrent, and a mandatory minimum sentence of 60 months' imprisonment on Count III to be served consecutively to the terms of imprisonment imposed for Counts I and II, for a total of 90 months. (ECF No. 42.) Easton is serving his sentence at the minimum security satellite camp at the Marion United States Penitentiary in Marion, Illinois. His projected release date is August 27, 2024, but federal Bureau of Prisons ("BOP") records show a halfway house transfer date for Easton of March 19, 2021, a little over four months from now. (ECF 62 at 18.) The BOP has determined Easton has a "low" recidivism risk. (ECF No. 54 at 44.)

Easton, a Black man who is now 51 years old, suffers from Type 2 diabetes mellitus with diabetic peripheral neuropathy, for which he previously took Metformin. Easton also suffers Stage IIIB chronic kidney disease for which he takes Sodium Bicarbonate, hypertension for which

2

he takes Lisinopril and Metoprolol Tartrate, hyperlipidemia for which he takes aspirin and Atorvastatin, vitamin D deficiency for which he takes Cholecalciferol, anemia, H. pylori infection, diarrhea, gout, and abnormal weight loss for which he underwent colonoscopy and CT scan imaging without a resulting diagnosis. (Id. at 18-19, 22.) Easton tested symptomatic positive for COVID-19 on August 2, 2020. (Id. at 24-25.)

In the last eighteen months, Easton's kidney function has declined rapidly. BOP medical records show that from operating at 56.87% in July 2019, his kidney function has declined to 31% in June 10, 2020 (ECF No. 54 at 17-19, 31). Based on this rapid decrease in function, Easton's kidney function has almost certainly continued to decline in the five months since June 2020 although information is not available in the record before the Court. Easton's kidney disease has caused collateral conditions including monoclonal gammopathy of undetermined significance ("MGUS") and metabolic acidosis, which indicate high levels of protein and acid in the blood. (Id. at 32.) Nonetheless, the BOP has not changed Easton's chronic care classification from level 2, and his care level is unchanged since a prior incarceration in 2010.

Easton's kidney disease is treated by nephrologist Dr. Jonathan Wilkerson, M.D., a kidney specialist in Paducah, Kentucky. Prior to the COVID-19 pandemic, the BOP granted Easton unescorted medical furloughs to visit Dr. Wilkerson in Kentucky for treatment, from which he returned without incident. Since the pandemic, Easton has been unable to visit his kidney specialist and his appointments have been delayed and converted to telemedicine visits, one on May 4, 2020 (id. at 33), and the most recent to have occurred on October 31, 2020. (Id. at 24.) The effect on Easton's kidneys of having had the COVID-19 virus is currently unknown, but it is likely to have caused further damage as COVID-19 frequently causes acute kidney injury even to persons "who had no underlying kidney problems before they were infected with the

3

coronavirus."[1]  In addition, BOP medical records show that Easton's diabetes medication, Metformin, was stopped on July 15, 2020, even though his Hemoglobin A1C level was 6.7%, indicating that he still has type 2 diabetes.[2]  These facts indicate the BOP has reduced the frequency and quality of Easton's medical care precisely at a time when his kidney function is declining, leaving him in a dangerous position.  Easton asserts that his serious medical conditions substantially diminish his ability so provide self-care.

The Centers for Disease Control and Prevention ("CDC") currently advises that for people of any age, "Having chronic kidney disease *of any stage* increases your risk for severe illness from COVID-19."  (Emphasis added).[3]  The Government incorrectly asserts in its opposition memorandum that "[w]hile kidney disease may also qualify as a risk factor in some cases, CDC guidance *makes clear that an individual must be on dialysis to warrant heightened concern.*  Here, Defendant recognizes that he was not on dialysis at the time his motion was filed." (ECF No. 57 at 8, n.1) (emphasis added).  The Government cites the CDC's website for this proposition but does not provide a date last visited.  (Id.)  Easton points out in his Reply that the Government's statement is blatantly incorrect: "In fact the CDC's guidance is unequivocal that 'having chronic

---

[1] See C. John Sperati, M.D., Coronavirus: Kidney Damage Caused by COVID-19 (John Hopkins Medicine) https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/coronavirus-kidney-damage-caused-by-covid19 (explaining the multiple perils COVID-19 poses to kidney tissues and functioning and the body's response) (last visited Nov. 9, 2020).

[2] See Centers for Disease Prevention and Control, Diabetes, All About Your A1C, https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html (A1C level of 6.5% or more indicates diabetes) (last visited Nov. 9, 2020).

[3] Centers for Disease Prevention and Control, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 9, 2020).

4

kidney disease of any stage increases your risk for severe illness from COVID-19.'" (ECF No. 62 at 2, 10).[4]

The CDC also advises that people of any age with Type 2 diabetes mellitus are at increased risk of severe illness from COVID-19. Further, the CDC states that people with hypertension or high blood pressure might be at an increased risk for severe illness from COVID-19.[5] "Severe illness from COVID-19 is defined as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death."[6] The fact that Easton has multiple significant underlying medical conditions further increases his risk for severe illness from COVID-19: "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."[7]

The fact that Easton has already contracted COVID-19 does not mean he is no longer at risk, but it does show the BOP cannot protect him from the virus. In addition to the unknown damage Easton's kidneys may have suffered, there are rare reports of persons contracting COVID-19 more than once, and the degree of protective immunity conferred by infection with COVID-19 is currently unknown:

> Recurrence of COVID-19 illness appears to be very uncommon, suggesting that the presence of antibodies could indicate at least short-term immunity to infection with SARS-CoV-2. . . . However, it remains uncertain to what degree and for how long individuals with antibodies (neutralizing or total) are protected against reinfection with SARS-CoV-2 or what concentration of antibodies may be needed to provide such protection. . . . [U]ntil the durability and duration of immunity are established, it cannot be assumed that individuals who test positive for SARS-

---

[4]Despite this correction, the Government did not immediately withdraw or otherwise rectify its initial representation to the Court based on prior CDC guidance. After the Court issued its original order granting Easton's request for compassionate release, however, the Government remedied this issue and clarified that, under current CDC guidance, kidney disease of any stage increases an individual's risks related to COVID-19.

[5]See n.3, *supra*.

[6]See n.3, *supra*.

[7]See n.3, *supra*.

CoV-2 antibodies, including total antibody, IgM, IgG, or IgA, are protected from future infection."[8]

A recent scientific paper funded by the National Institute of General Medical Sciences and the National Institutes of Health concurs that "[t]he degree of protective immunity conferred by infection with SARS-CoV-2 is currently unknown," and "conclude[s] that it is possible for humans to become infected multiple times by SARS-CoV-2, but the generalizability of this finding is not known."[9]

Easton asserts in his Motion that his Stage 3 chronic kidney disease and declining kidney function, Type 2 diabetes, hypertension, and other serious medical conditions, together with his recent COVID-19 diagnosis and his inability to obtain in-person treatment from his kidney specialist, constitute extraordinary and compelling reasons for compassionate release..

## II.   DISCUSSION

Easton moves for release under 18 U.S.C. § 3582(c)(1)(A). As amended by the First Step Act, Section 3582(c)(1)(A) authorizes the Court to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent

---

[8]Centers for Disease Prevention and Control, Coronavirus Disease 2019 (COVID-19), Antibody Testing Interim Guidelines, https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antibody-tests-guidelines.html (last visited Nov. 9, 2020).

[9]Richard Tillett, Joel Sevinsky, Paul Hartley, Heather Kerwin, Natalie Crawford, Andrew Gorzalski, Christopher Laverdure, Subhash Verma, Cyprian Rossetto, David Jackson, Megan Farrell, Stephanie Van Hooser, and Mark Pandori, Genomic Evidence for a Case of Reinfection with SARS-CoV-2 (August 25, 2020). Available at SSRN: https://ssrn.com/abstract=3680955 or http://dx.doi.org/10.2139/ssrn.3680955 (last visited Nov. 9, 2020).

6

>  with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

To be entitled to relief under the statute, Easton must meet both the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The Court addresses these requirements in turn.

### A. Exhaustion

Section 3582(c)(1)(A) imposes a statutory exhaustion requirement. On May 8, 2020, Easton submitted his request for reduction in sentence with the Warden of Marion USP. (ECF No. 54 at 39-40.) The request was denied May 11, 2020. (Id. at 42.) The United States does not dispute that Easton has administratively exhausted his claim and his Motion is properly before the Court for determination.

### B. Extraordinary and Compelling Reasons for Release

Section 3582(c)(1)(A) authorizes courts to reduce a sentence for "extraordinary and compelling reasons," but only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Congress has not defined "extraordinary and compelling reasons" except to state that "rehabilitation alone" does not suffice. 18 U.S.C. § 944(t) (cleaned up). The Sentencing Commission was authorized to define the term and it did so before enactment of the First Step Act, which amended section 3852(c)(1)(A) to, among other things, allow inmates to petition courts directly for compassionate release, and eliminate the BOP's previously exclusive "gatekeeper" role. See United States v. Rodriguez, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020).

7

Section 1B1.13 of the Sentencing Guidelines states that a sentence reduction under section 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

In subsections (A)-(C) of the Application Note to section 1B1.13, the Commission identified three "reasons" that meet the "extraordinary and compelling" standard of section 3582(c)(1)(A): (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances. See id. cmt. n.1(A)-(C). The policy statement also has a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. cmt. n.1(D).

The Government argues that Easton does not meet the statutory standards and cannot show the reasons listed in the policy statement issued by the sentencing commission. Sentencing Guideline section 1B1.13 and its Application Note 1 have not been amended to reflect the changes made by the First Step Act, because the United States Sentencing Commission has not had a quorum since the passage of the Act. Guidelines Section § 1B1.13 is inconsistent with the amended statute because it requires the Director of the BOP to make a motion for compassionate release. Application Note 1 is inconsistent with the new law because its list of specific reasons that could justify compassionate release (medical condition, age, family circumstances) are not

8

required by the statute and its catch-all "other reasons" subsection requires the Director of the BOP to determine what are "extraordinary and compelling" reasons. For this reason, many courts have found that the guideline does not limit the factors a court may consider but instead merely provides helpful guidance of some factors. See, e.g., United States v. Schaffer, 4:16-CR-426 CDP, slip op. at 4-5 (E.D. Mo. May 5, 2020); United States v. Brown, 2020 WL 2091802 at *5-6 (S.D. Iowa Apr. 29, 2020); United States v. Marks, 2020 WL 1908911 (W.D.N.Y. Apr. 20, 2020); United States v. Resnick, 2020 WL 1658508 (S.D.N.Y. Apr. 2, 2020); United States v. Schmitt, 2020 WL 96904 at *3 (N.D. Iowa Jan. 8, 2020); United States v. Urkevich, 2019 WL 6037391 (D. Neb. Nov. 14, 2019).

The Eighth Circuit Court of Appeals has not articulated the extent of a district court's discretion under the First Step Act to determine whether extraordinary and compelling reasons exist for compassionate release, but it has recognized that such discretion exists. See United States v. Rodd, 966 F.3d 740, 746-47 & n.7 (8th Cir. 2020). The Second Circuit recently analyzed the First Step Act in depth in United States v. Brooker (Zullo), 976 F.3d 228 (2d Cir. 2020). It held that the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling," id. at 236, and that Guidelines § 1B1.13 Application Note 1(D) applies only where a First Step Act motion is filed by the BOP. Id. The Second Circuit concluded, "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237. In the absence of contrary authority from the Eighth Circuit, the Court finds this analysis persuasive.

Courts have also concluded that the history of § 603 of the First Step Act along with its title, "Increasing the Use and Transparency of Compassionate Release," shows Congress intended

9

to liberalize the use of compassionate release, and to accomplish that purpose courts cannot be limited to the same restrictive list that previously limited the BOP. See Schaffer, 4:16-CR-426 CDP, slip op. at 5; Marks, 2020 WL 1908911, at *5; Brown, 2020 WL 2091802, at *7. This Court concurs that while the guideline and its application note can provide helpful guidance, they do not limit the factors a district court can consider.

Medical records from the BOP show Easton suffers from rapidly worsening Stage 3 chronic kidney disease, Type 2 diabetes mellitus with peripheral neuropathy, hypertension, hyperlipidemia, anemia, abnormal weight loss, and other serious conditions. The records show Easton has not been able to obtain in-person treatment from his kidney specialist since the pandemic began, and that he contracted COVID-19 which may have damaged his kidneys further.

Although the application note does not limit its discretion, the Court finds that Easton meets the standard set out in subsection (1)(A), as he has a serious medical impairment from which he is unlikely to recover, i.e., Stage 3 chronic kidney disease, that substantially diminishes his capacity for self-care in prison given his inability to access in-person treatment from a kidney specialist in a timely manner. Easton's serious medical conditions considered as a whole also constitute extraordinary and compelling reasons under the catchall provision, subsection (D).

In sum, the Court finds that Easton's multiple serious underlying medical conditions, and in particular his deteriorating kidney function and inability to see his kidney specialist, constitute extraordinary and compelling reasons to warrant a reduction of his sentence. Recently, many courts have granted motions for compassionate release for reasons based on prisoner's medical conditions and the COVID-19 public health crisis. See Brown, 2020 WL 2091802, at *7-9 (approving compassionate release based on factors including extraordinary rehabilitation, sentencing disparity under 18 U.S.C. § 924(c), and high risk for COVID-19 based on factors of low white blood cell count and hypertension); United States v. Gonzalez, 2020 WL 1536155, at *3

(approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable" to COVID-19); United States v. Hernandez, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (finding "extraordinary and compelling reasons" to reduce the defendant's sentence due to defendant's asthma and the "heightened medical risk presented to [the defendant] by the COVID-19 pandemic"); Rodriguez, 2020 WL 1627331, at *2 (granting compassionate release because for a diabetic inmate, "nothing could be more extraordinary and compelling than this pandemic"); United States v. Campagna, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC.").

Accordingly, the Court finds that Easton has demonstrated extraordinary and compelling reasons justifying his release.

### C. Other Considerations

Section 1B1.13 of the Sentencing Guidelines further provides that a court may reduce a term of imprisonment only if it determines that "[t]he defendant is not a danger to the safety of any other person or to the community[,]" U.S.S.G. § 1B1.13(3), and only after it considers the factors set forth in 18 U.S.C. § 3553(a).

The Court considers whether Easton presents "a danger to the safety of any other person or to the community[.]" U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g). The circumstances of the instant offense were

11

described above. Easton was also convicted of possession of a controlled substance (marijuana) and sentenced to five years in the Missouri Department of Corrections in 2005 at age 36. While on probation for that offense, Easton was arrested in February 2008 at age 38 and convicted on federal charges of distribution of 5 grams or more of cocaine base and possession with intent to distribute marijuana in Case No. 1:08-CR-23 ERW (E.D. Mo.) Easton was sentenced to an aggregate term of 96 months and four years' supervised release, later reduced to an aggregate term of 60 months and four years' supervised release based on a retroactive amendment to the United States Sentencing Guidelines. (ECF Nos. 33, 53 in No. 1:08-CR-23 ERW.)

Applying these factors in this case, the Court cannot conclude that Easton poses no risk at all to public safety, based on the nature and circumstances of his offense, his possession of a firearm, and his criminal history involving similar drug offenses. Easton is not a violent offender, however, and the Court is particularly cognizant of the fact that the BOP gave Easton unescorted medical furloughs across state lines prior to the pandemic, which he completed without incident. Further, given Easton's age, serious health problems, the substantial amount of time he has already served, his designation as a "low" recidivism risk, and his BOP designation for a halfway house four months from now, the Court finds the risk of Easton engaging in further criminal conduct is minimal and can be managed through the terms of his supervised release. See 18 U.S.C. § 3142(g) (stating that conditions of release can mitigate danger to the community). More specifically, Easton will be placed on supervised release for three years, and the standard and special conditions previously imposed will result in substantial oversight by the United States Probation Office. See Judgment (ECF No. 42 at 3-5). With appropriate supervision, the Court concludes that Easton will not be "a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." See U.S.S.G. § 1B1.13(2).

Easton has a suitable and supportive release plan to live with his wife, Micah Easton, in Cape Girardeau, Missouri. He will have her financial support until he can gain employment. Easton has a high school diploma and his PSR identified no barriers to employment. (ECF No. 34 at 13, ¶ 55.) Easton will be able to receive medical care at Saint Francis Medical Center in Cape Girardeau.

Finally, the Court finds that the factors listed in 18 U.S.C. § 3553(a) weigh in favor of Easton's resentencing to time served. Because section 3553(a) establishes factors to consider in initially imposing a sentence, not every factor applies here. The applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; ... [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

The Court has discussed the nature of Easton's current and prior offenses. Easton has been in BOP custody on the instant offense since February 2018, in declining health. Once released, Easton will be on supervised release for three years, which will serve as continued sanction and general deterrent. This is particularly truly in this time of pandemic. Easton will know that if he violates release conditions and the Court revokes his supervised release, he will return to prison

13

and place in grave jeopardy his ability to obtain adequate care for his serious medical conditions. For the reasons already discussed, the Court finds that these additional sanctions will protect the public from the risk of future crimes by Easton.

The sentence imposed must serve the enumerated purposes of punishment. Id. § 3553(a)(2). The court should "impose a sentence sufficient, but not greater than necessary, to comply with [these] purposes." Id. § 3553(a). Given the length and circumstances of Easton's incarceration and the BOP's plan to release him to a halfway house in four months, the Court finds that a sentence of time served would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

Releasing Easton also will serve the interest of providing him with the most effective medical care. The Eighth Amendment guarantees inmates in BOP custody the right to adequate medical care for a serious medical need. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Estell v. Gamble, 429 U.S. 97, 103-05 (1976). It does not require the BOP to provide optimal medical care or the care of an inmate's choosing. Here, the record indicates that Easton appears to have received appropriate care from the BOP prior to the pandemic, but since that time the quality of care and his access to care have declined as his kidney condition has worsened. A reduction of Easton's sentence will enable him to seek from the doctors and hospitals of his choice what may be better medical care than the BOP is obligated or able to provide. He has a place to live and a spouse to help support him and assist him in obtaining medical care, and the United States Probation Office in this District will supervise him and provide structure and support through its numerous programs designed to facilitate reentry into society.

On balance, the Court concludes that the applicable § 3553(a) factors support Easton's request for a reduction in sentence.

### III. CONCLUSION

For the foregoing reasons, Easton's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) will be granted. Easton's sentence is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), and he shall be immediately released from custody. Upon his release, Easton will be subject to the conditions of supervision for a period of three years on terms previously imposed as set forth in the amended judgment to be entered by the Court. All other aspects of Easton's sentence remain unchanged.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Daryn J. Easton's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED**. (ECF No. 47)

**IT IS FURTHER ORDERED** that Defendant Daryn J. Easton's sentence is reduced to time served, with three (3) years supervised release on terms previously imposed. The sentence will be effective immediately and Mr. Easton shall be immediately released from the custody of the Bureau of Prisons. An Amended Judgment will be issued separately.

**IT IS FURTHER ORDERED** that upon his release from the custody of the Federal Bureau of Prisons, Easton must begin serving the three (3) year term of supervised release previously imposed.

**IT IS FINALLY ORDERED** that the Clerk shall provide a copy of this Order to the Probation Office and to the Bureau of Prisons.

**IT IS FURTHER ORDERED** that the Memorandum and Order of November 10, 2020 (ECF No. 64) is **VACATED** and the Clerk of the Court shall delete it from the record.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 17th day of November, 2020.